| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| JULIANNE POLITO, | |
| Plaintiff, | |
| – against – | **MEMORANDUM & ORDER** |
| THE CITY OF NEW YORK, et al., | 15-cv-02301 (ERK) (RML) |
| Defendants. | |

KORMAN, *J*.:

On September 26, 2016, Julianne Polito filed her Second Amended Complaint against Defendants, alleging an array of federal and state law claims arising out of the termination of her at-will agreement with Hand in Hand, Inc., an agency that assigns early intervention providers to students with developmental disabilities. 2d Am. Compl, ECF No. 55. On December 21, 2017, I dismissed all of Polito's claims against except for one—her claim for tortious interference with contract. Mem. & Order 6, ECF No. 71. When I declined to dismiss that claim on the pleadings, I observed that the "thrust of Polito's complaint" was that she "alleges that the defendants threatened her employer 'with economic ruin if [it] did not terminate Polito's contract.'" *Id.* at 9 (citing 2d Amend. Compl. ¶¶ 42, 58). I suggested that if proven, this allegation could support a viable tortious interference claim. *Id*. at 9–10 (citing *Lurie v. New Amsterdam Casualty Co.*, 270 N.Y. 379, 381 (1936) (upholding tortious-interference verdict where insurer threatened to withhold payment to car-

1

accident victim unless victim fired his at-will attorney)); *see Taboola, Inc. v. Ezoic Inc.*, 2020 WL 1900496, at *8 (S.D.N.Y. Apr. 17, 2020) ("Where the means employed to induce the breach are 'wrongful,' however, the valid contract prong of a tortious interference claim may be satisfied by an at-will contract."). At the same time, I explained that "discovery may well reveal that the defendants' actions were a justified response to a parent's valid complaint rather than what Polito describes." Mem. & Order 10. After such discovery took place, Defendants moved for summary judgment.

## BACKGROUND

In 2006, Polito began working with Hand in Hand as a state-appointed early intervention case worker on an at-will basis. On December 24, 2014, a parent emailed Hand in Hand service coordinator Francia Despradel saying that she had seen a NY Post article reporting that while Polito was a teacher at MS 344 Academy of Collaborative Education, she had thrown a book at a student and made derogatory remarks towards that same student. Defs.' 56.1 Stmt. ¶¶ 17–19, ECF No. 172. The parent stated it was "totally unacceptable" that the agency would "refer someone like [Polito] to [her] family," and added that she intended to speak with "early intervention" (it is unclear if she meant the City or State). *Id.* at ¶ 17.

On December 31, 2013, Ms. Despradel forwarded the parent's complaint to an assistant director at the City's Bureau of Early Intervention. *Id*. at ¶ 21. The email

2

was then forwarded internally to Patricia Pate, Director of Provider Oversight, who shared the parent's message with Nora Puffett, the Bureau's Director of Administration and Data for Early Intervention. *Id*. Pate testified that shortly thereafter, she called Margaret Adeigbo at the New York State Health Department to discuss how to proceed. Pate Dep. Tr. 29:3–5, 30:8–20, ECF No. 171-9. Pate explained the parent's complaint to the Health Department, and said she intended to discuss the matter with Hand in Hand. *Id*. The Health Department "agreed with [the Bureau's] plan to tell Hand in Hand." *Id*. at 30:17–20.

On January 15, 2014, Pate and Puffet spoke on the phone with Dr. Leah Lax, Hand in Hand's Education Director, and Beth Statfield, Hand in Hand's Chief Financial Officer. Defs.' 56.1 Stmt. ¶ 33. Dr. Lax testified that Defendants did not tell Hand in Hand that they had to terminate Polito's contract or convey that Hand in Hand's ongoing business was conditioned on terminating their relationship with Polito. Defs.' 56.1 Stmt. ¶¶ 38–39, 41–42; Lax Dep. Tr. 116:14–19, 116:24–117:5, ECF No. 171-10. Likewise, Statfield testified that Defendants did not tell Hand in Hand to terminate Polito's agreement, and when she was asked if she was told that Hand in Hand would not receive any more cases from the City Department of Health and Mental Hygiene if they did not terminate Polito, she replied "not that I recall." Defs.' 56.1 Stmt. ¶ 39; Statfield Dep. Tr. 148:7–10, 148:15–20, ECF No. 175-13. The only recommendation Dr. Lax and Statfield recalled from the phone call was Pate's recommendation that they reach out to the State Department of Health. Defs.'

3

56.1 Stmt. ¶ 37; Pate Dep. Tr. 44:13–14, 45:21–24; Statfield Dep. Tr. 149:4–10. Indeed, Dr. Lax testified that following that phone call, she spoke to Margaret Adeigbo at the Department of Health regarding Polito. Lax Dep. Tr. 69:10–25, ECF No. 175-14.

One week after the conference call, Pate emailed Lax and Statfield to check whether Hand in Hand had an update regarding Polito. In the brief exchange that followed, Statfield indicated that Hand in Hand would no longer be working with Polito. Defs.' 56.1 Stmt. ¶¶ 44–47. In response, Pate replied, "thank you," which she testified she said out of "basic politeness." Pate Dep. Tr. 59:16–21.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Viewing the facts in the light most favorable to the party opposing the motion, *Matsushitsa Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), a genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Conclusory allegations, conjecture, and speculation, however, are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

## DISCUSSION

A. *Applicable Law*

Under New York law, the elements of tortious interference with contract are (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). The Second Circuit has held that to prove the third element, "procurement of the third-party's breach of the contract without justification," an at-will employee must "establish that [the] 'third party used wrongful means to effect the termination such as fraud, misrepresentation, or threats, that the means used violated a duty owed by the defendant to the plaintiff, or that the defendant acted with malice.'" *Albert v. Loksen*, 239 F.3d 256, 274 (quoting *Cohen v. Davis*, 926 F. Supp. 399, 403 (S.D.N.Y. 1996)). The critical question is whether, based on the January 15, 2014 phone call between Pate, Puffett, Lax, and Statfield, Defendants procured Polito's firing using "wrongful means." *Id*. at 274.

B. *Defendants Did Not Threaten Hand in Hand*

Discovery has not borne out Polito's allegation that Pate and Puffet threatened Hand in Hand with "economic ruin" during the January 15, 2014 phone call. 2d Am. Compl. ¶¶ 42, 58. Instead, the record demonstrates that in the context of apprising

5

Hand in Hand of a parent's complaint, Pate stated her view that it would be in Hand in Hand's "best interest" not to use Dr. Polito. Statfield Dep. Tr. 80:6–12. Dr. Lax testified that Pate did not tell Hand in Hand to terminate Polito's contract, and that Pate did not convey that Hand in Hand's ongoing business depended on whether they kept working with Polito. Dr. Lax Dep. Tr. 116:14–19, 116:24–117:5. In the face of this testimony, Polito's allegation that Defendants threatened Hand in Hand does not create a genuine dispute of a material fact. *See Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) ("[R]eliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion.").

Indeed, Defendants had neither the ability nor the motive to economically threaten Hand in Hand. Hand in Hand's funding comes from the State, not the City. Statfield Dep. Tr. 147:3–6. Defendants never met Polito. Defs.' 56.1 Stmt. ¶ 12. And unlike competitors in the marketplace, who are alleged to interfere with a third-party's contract, Defendants had no commercial incentive to prevent Hand in Hand from assigning cases to particular providers. As Second Restatement of Torts § 766provides: "The plaintiff's interest in his contractual rights and expectancies must be weighed, however, against the defendant's interest in freedom of action. If the defendant's conduct is predatory the scale on his side may weigh very lightly, but if his conduct is not predatory it may weigh heavily." Restatement, Second. Here, Defendants' interest was in communicating freely with a partner agency, not gaining a competitive edge. Such communication was appropriate given the Bureau of Early

6

Intervention's monitoring authority, *see* Klaben-Finegold Decl. Ex. E, ECF No. 171-5, and Pate and Puffett's responsibilities with respect to interacting with agencies. Puffett Dep. Tr. 155:14–21, ECF No. 175-9. Polito cites no legal authority for the proposition that Defendants' outreach to Hand in Hand could trigger liability on these facts. Finally, as Polito testified, she continued to provide education and development services through another agency in the city following her termination at Hand in Hand, undercutting the notion that Defendants sought to eliminate her employment opportunities with such providers. Polito Dep. Tr. 12:24–14:1, ECF No. 166-1.

      Unable to point to evidence corroborating her allegation as pled, Polito instead relies on the deposition testimony of Chaim Lax, Hand in Hand's Intake Coordinator. Specifically, Polito argues that "[b]ut for the defendants' threats in the form of the phrase they used to Hand in Hand's principles [sic], that it would be [in Hand in Hand's] 'best interest' to terminate Dr. Polito, Chiam [sic] Lax of Hand in Hand testified that this parent's complaint would not stop Hand in Hand from continuing to contract with Dr. Polito." Pl.'s Opp. Mem. 9, ECF No. 177. But this argument is misplaced. Polito's opposition brief does not cite to anything in the record to support the claim that but for Pate's comments, Hand in Hand would have kept assigning cases to Polito. *Id.* And as Lax testified, he was not privy to the context of Polito's termination. Lax Dep. Tr. 37:2–11, ECF No. 175-15. Moreover, even assuming for the sake of argument that Hand in Hand would have kept assigning cases to Polito

7

"but for" Defendants' outreach, causation alone is immaterial. Indeed, it simply begs the question of whether Defendants' outreach was improper. Lax's testimony sheds no light on that question.

In sum, the uncontroverted evidence shows that Defendants did not improperly threaten Hand in Hand to procure the termination of their relationship with Polito, and Polito's claim for tortious interference is without merit.

## CONCLUSION

Defendants' Motion for Summary Judgment is granted, and the case is dismissed.

                                                    **SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York                                   Edward R. Korman
May 29, 2020                                          United States District Judge